UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, AND ADMINISTRATOR, NEW JERSEY SPILL COMPENSATION FUND, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. _____ |
| v. | ) ) | |
| BANK OF AMERICA, NATIONAL ASSOCIATION, | ) ) ) | |
| Settling Defendant. | ) ) ) | |

**CONSENT DECREE**

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................................ 5
II.     PARTIES BOUND .................................................................................................. 5
III.    DEFINITIONS ........................................................................................................ 5
IV.     OBJECTIVES ........................................................................................................ 10
V.      PERFORMANCE OF THE WORK ....................................................................... 10
VI.     PROPERTY REQUIREMENTS ............................................................................ 12
VII.    FINANCIAL ASSURANCE ................................................................................... 14
VIII.   INDEMNIFICATION AND INSURANCE ............................................................ 19
IX.     PAYMENTS FOR RESPONSE COSTS ............................................................... 20
X.      FORCE MAJEURE ............................................................................................... 22
XI.     DISPUTE RESOLUTION ..................................................................................... 23
XII.    STIPULATED PENALTIES ................................................................................. 25
XIII.   COVENANTS BY PLAINTIFFS .......................................................................... 27
XIV.    COVENANTS BY SETTLING DEFENDANT ...................................................... 29
XV.     EFFECT OF SETTLEMENT; CONTRIBUTION ................................................. 29
XVI.    RECORDS ............................................................................................................. 30
XVII.   NOTICES AND SUBMISSIONS .......................................................................... 32
XVIII.  APPENDIXES ....................................................................................................... 33
XIX.    MODIFICATIONS TO DECREE .......................................................................... 34
XX.     SIGNATORIES ..................................................................................................... 34
XXI.    PRE-ENTRY PROVISIONS ................................................................................. 34
XXII.   INTEGRATION .................................................................................................... 35
XXIII.  FINAL JUDGMENT ............................................................................................. 35

**BACKGROUND**

WHEREAS, Plaintiffs United States of America ("United States") on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the New Jersey Department of Environmental Protection, the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund (collectively referred to as "NJDEP"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11 through 23.24.

WHEREAS, the Plaintiffs in their complaint seek, *inter alia*: (1) reimbursement of costs incurred by EPA, the Department of Justice ("DOJ"), NJDEP, and the New Jersey Division of Law for response actions at the White Swan Cleaners/Sun Cleaners Area Ground Water Contamination Superfund Site in Wall Township, New Jersey ("Site"), together with accrued interest; and (2) performance by the Settling Defendant of a response action at the Site consistent with the National Contingency Plan, 40 C.F.R. part 300 ("NCP") and state laws and regulations, as identified in this Decree.

WHEREAS, in accordance with the NCP and section 121(f)(1)(F) of CERCLA, EPA notified the NJDEP by email dated April 7, 2014, of negotiations with the potentially responsible party ("PRP") regarding the implementation of the remedial design and remedial action ("RD/RA") for the Site, and EPA has provided the NJDEP with an opportunity to participate in such negotiations and to be a party to this Consent Decree ("Decree").

WHEREAS, in accordance with section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the National Oceanic and Atmospheric Administration and U.S. Fish and Wildlife Service (NJ Field Office) on June 2, 2022, and NJDEP's Office of Natural Resource Restoration on November 16, 2020, of negotiations with the PRP regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Decree.

WHEREAS, Settling Defendant enters into this Decree without admitting any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaints, nor does it acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

WHEREAS, in accordance with section 105 of CERCLA, EPA listed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. part 300, Appendix B, by publication in the Federal Register on September 23, 2004, 69 Fed. Reg. 56,949.

WHEREAS, in response to a release or a substantial threat of a release of hazardous substances at or from the Site, beginning in 2006 Settling Defendant has cooperated with EPA in performing investigation and remediation at the Site and EPA and Settling Defendant completed a Remedial Investigation for the Site and a Feasibility Study for the Site on September 30, 2013, in accordance with 40 C.F.R. § 300.430.

WHEREAS Settling Defendant has also cooperated with EPA in performing vapor intrusion investigation and mitigation throughout the Site.

WHEREAS, in accordance with section 117 of CERCLA and 40 C.F.R § 300.430(f), EPA published notice of the completion of the Feasibility Study and of the proposed plan for remedial action on August 20, 2013, and August 22, 2013, in two major local newspapers of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting and comments received are available to the public as part of the administrative record upon which the Director of the Superfund and Emergency Management Division, EPA Region 2, based the selection of the response action.

WHEREAS, EPA selected a remedial action to be implemented at the Site, which is embodied in a final Record of Decision ("ROD"), executed on September 30, 2013, as modified in an Explanation of Significant Differences ("ESD") issued on September 25, 2017, on both of which NJDEP had a reasonable opportunity to review and provide comments and has given its concurrence. The ROD includes a summary of responses to the public comments. Notice of the final plan was published in accordance with section 117(b) of CERCLA and notice of the ESD was published in accordance with section 117(c) of CERCLA.

WHEREAS, based on the information currently available, EPA and NJDEP have determined that the Work will be properly and promptly conducted by Settling Defendant if conducted in accordance with this Decree.

WHEREAS, the Site, defined in Section III, is an area of soil and groundwater contaminated with dry cleaning chemicals and/or their breakdown products located in portions of three municipalities: Wall Township, Manasquan Borough and Sea Girt Borough, New Jersey.  The Site includes two primary source areas that were the locations of two former, independently owned and operated dry cleaning operations located approximately 0.2 miles apart that contributed the same contaminant, tetrachloroethylene (also known as perchloroethylene or PCE), to the soils and groundwater.  Settling Defendant is the current owner of the former White Swan Cleaners property, located at 1322 Sea Girt Avenue, Wall Township, New Jersey.  Another entity not a party to this Decree is the owner of the former Sun Cleaners property, located at 2213 Route 35 (also known as Manasquan Circle) in Wall Township, New Jersey.

WHEREAS, Settling Defendant asserts that the harm at the Site is divisible.  The extent to which harm at the Site may be divisible is a matter of dispute between the United States and Settling Defendant.

WHEREAS, the Parties recognize, and the Court by entering this Decree finds, that this Decree has been negotiated by the Parties in good faith, that implementation of this Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Decree is fair, reasonable, in the public interest, and consistent with CERCLA.

NOW, THEREFORE, it is hereby **ORDERED** and **DECREED** as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1367, and 1345, and sections 106, 107 and 113(b) of CERCLA, and personal jurisdiction over the Parties. Venue lies in this District under section 113(b) of CERCLA and 28 U.S.C. §§ 1391(b), and 1395(a), because the Site is located in this judicial district. This Court retains jurisdiction over the subject matter of this action and over the Parties for the purpose of resolving disputes arising under this Decree, entering orders modifying this Decree, or effectuating, interpreting, or enforcing compliance with this Decree.  Settling Defendant may not challenge the terms of this Decree or this Court's jurisdiction to enter and enforce this Decree.

## II.  PARTIES BOUND

2.      This Decree is binding upon the United States and NJDEP and upon Settling Defendant and its successors. Unless the United States otherwise consents, (a) any change in ownership or corporate or other legal status of Settling Defendant, including any transfer of assets, or (b) any Transfer of the portion of the Site that Settling Defendant owns or any portion thereof, does not alter any of Settling Defendant's obligations under this Decree. Settling Defendant's responsibilities under this Decree cannot be assigned except under a modification executed in accordance with ¶ 73.

3.      In any action to enforce this Decree, Settling Defendant may not raise as a defense the failure of any of its officers, directors, employees, agents, contractors, subcontractors, or any person representing Settling Defendant to take any action necessary to comply with this Decree. Settling Defendant shall provide notice of this Decree to each person representing Settling Defendant with respect to the Site or the Work. Settling Defendant shall provide notice of this Decree to each contractor performing any Work and shall ensure that notice of the Decree is provided to each subcontractor performing any Work.

## III.  DEFINITIONS

4.      Subject to the next sentence, terms used in this Decree that are defined in CERCLA or the regulations promulgated under CERCLA have the meanings assigned to them in CERCLA and the regulations promulgated under CERCLA. Whenever the terms set forth below are used in this Decree, the following definitions apply:

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" or "Decree" means this consent decree, all appendixes attached hereto (listed in Section XVIII), and all deliverables incorporated into the Decree under ¶ 6.6 of the Statement of Work ("SOW"). If there is a conflict between a provision in Sections I through XXIII and a provision in any appendix or deliverable, the provision in Sections I through XXIII controls.

"Day" or "day" means a calendar day. In computing any period under this Decree, the day of the event that triggers the period is not counted and, where the last day is not a working

day, the period runs until the close of business of the next working day. "Working day" means any day other than a Saturday, Sunday, or federal or State holiday.

"DOJ" means the United States Department of Justice.

"Effective Date" means the date upon which the Court's approval of this Decree is recorded on its docket.

"EPA" means the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"Fund" means the Hazardous Substance Superfund established under section 9507 of the Internal Revenue Code, 26 I.R.C. § 9507.

"Future Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States: (a) pays between August 31, 2021 and the Effective Date; and (b) pays on or after the Effective Date in implementing, overseeing, or enforcing this Decree, including: (1) in developing, reviewing and approving deliverables generated under this Decree; (2) in implementing the obligations of EPA set forth in Section V of this Decree; (3) in assisting or taking action to obtain access or use restrictions under ¶ 13.e; (4) in securing, implementing, monitoring, maintaining, or enforcing Institutional Controls, including any compensation paid; (5) in taking action under ¶ 23 (Access to Financial Assurance); (6) in taking response action described in ¶ 56 because of Settling Defendant's failure to take emergency action under ¶ 4.5 of the SOW; (7) in implementing a Work Takeover under ¶ 12; (8) in implementing community involvement activities including the cost of any technical assistance grant provided under section 117(e) of CERCLA; (9) in enforcing this Decree, including all costs paid under Section XI (Dispute Resolution) and all litigation costs; and in conducting periodic reviews in accordance with section 121(c) of CERCLA. Future Response Costs also includes all Interest accrued after August 31, 2021, on EPA's unreimbursed costs (including Past Response Costs) under Section 107(a) of CERCLA.

"Including" or "including" means "including but not limited to."

"Institutional Controls" means proprietary controls (i.e., easements or covenants running with the land that (i) limit land, water, or other resource use, provide access rights, or both and (ii) are created under common law or statutory law by an instrument that is recorded, or for which notice is recorded, in the appropriate land records office) and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure noninterference with, or ensure the protectiveness of the Remedial Action; (c) provide information intended to modify or guide human behavior at or in connection with the Site; or (d) any combination thereof.

"Interest" means interest at the rate specified for interest on investments of the Fund, as provided under section 107(a) of CERCLA, compounded annually on October 1 of each year. The applicable rate of interest will be the rate in effect at the time the interest accrues. The rate of

interest is subject to change on October 1 of each year. As of the date of lodging of this Decree, rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"National Contingency Plan" or "NCP" means the National Oil and Hazardous Substances Pollution Contingency Plan promulgated under section 105 of CERCLA, codified at 40 C.F.R. part 300, and any amendments thereto.

"Natural Resources" as used in this Settlement Agreement includes all land, fish, shellfish, wildlife, biota, air, waters, and other such resources owned, managed, held in trust or otherwise controlled by the State.

"NJDEP" shall mean the New Jersey Department of Environmental Protection and any successor departments or agencies of the State of New Jersey.

"NJDEP Future Cleanup and Removal Costs" shall mean all costs, including direct and indirect costs, State Interest on such costs and oversight costs as defined in N.J.A.C. 7:26C-1.3, that NJDEP will incur after the Effective Date of the Decree in connection with the Work or in connection with NJDEP's obligations under Section V of this Decree.

"NJDEP Natural Resource Damages" shall mean all claims arising from discharges at or from the former White Swan Laundry and Cleaners property that occurred prior to the Effective Date of this Decree, and that are recoverable by NJDEP as natural resource damages for injuries to natural resources under the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq, the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-1 through -20; the Oil Pollution Act, 33 U.S.C. §§ 2701 through 2761; the Clean Water Act, 33 U.S.C. §§ 1251 through 1387; the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 through 9675; the Sanitary Landfill Facility Closure and Contingency Fund Act, N.J.S.A. 13:1E-100 et seq., or any other state or federal common law, statute, or regulation, and includes:

    a.  The costs of assessing injury to natural resources, NJDEP Office of Natural Resource Restoration's ("ONRR's") costs and fees, including costs and fees incurred to determine that Settling Defendant has complied with the requirements of this Decree (oversight costs), attorney's fees, consultants and experts' fees, other litigation costs, and interest, incurred prior to the Effective Date of this Decree; and

    b.  Compensation for the lost value of, injury to, or destruction of natural resources.

"NJDEP Natural Resource Damages" do not include:

    a.  Compliance with any statutory or regulatory requirement that is not within the definition of Natural Resource Damages;

    b.  Requirements to clean up any contamination as a result of discharges at the Site; or

c.  The Settling Defendant's obligations to pay NJDEP's oversight costs determined pursuant to N.J.A.C. 7:26C-4.7.

"NJDEP Past Cleanup and Removal Costs" shall mean all costs, including direct and indirect costs that NJDEP incurred on or before the Effective Date of this Decree in connection with the Site, including oversight costs as defined in N.J.A.C. 7:26C-1.3, and State Interest on such costs.

"Operation and Maintenance" or "O&M" shall mean all activities required to operate, maintain, and monitor the effectiveness of the Remedial Action ("RA") as specified in the SOW or in accordance with any EPA-approved O&M Plan.

The "Operational Goal" of the System shall mean the attainment of concentrations of tetrachloroethylene ("PCE") at or below 200 parts per billion in groundwater at monitoring wells designated by EPA.

"Oversight Costs" shall mean costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) incurred by the United States in connection with oversight of Phase 1 - Remedial Action Construction as set forth in ¶ 4.7 of the SOW; Phase 2 - Remedial Action Performance as set forth in ¶ 4.8 of the SOW; and Vapor Intrusion ("VI") Mitigation as set forth in ¶ 4.8(e) of the SOW, or any other work performed by the Settling Defendant under the terms of this Decree and the SOW.

"Paragraph" or "¶" means a portion of this Decree identified by an Arabic numeral or an uppercase or lowercase letter.

"Parties" means the United States, the New Jersey Department of Environmental Protection, the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund, and Settling Defendant.

"Past Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States paid in connection with the Site through August 31, 2021, plus all Interest on such costs accrued under section 107(a) of CERCLA through such date.

"Performance Standards" means the cleanup levels and other measures of achievement of the remedial action objectives, as set forth in the Record of Decision.

"Plaintiffs" means the United States and the NJDEP.

"RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992k, (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" means the EPA decision document that memorializes the selection of the remedial action relating to the Site signed on September 30, 2013, by the Director of the Emergency & Remedial Response Division, EPA Region 2, and all attachments thereto, as modified by the Explanation of Significant Differences ("ESD") issued on September

25, 2017, explaining changes to the cost estimates for the remedial action selected in the ROD. The ROD and the ESD are attached as Appendix A.

"Remedial Action" means the remedial action selected in the Record of Decision.

"Scope of the Remedy" means the scope of the remedy set forth in ¶ 1.3 of the SOW.

"Section" means a portion of this Decree identified by a Roman numeral.

"Settling Defendant" means Bank of America, N.A.

"Site" means the White Swan Cleaners/Sun Cleaners Area Ground Water Contamination Superfund Site which includes (a) the location where the former White Swan Laundry and Cleaners once operated (1322 Sea Girt Avenue) and where the former Sun Cleaners once operated (2213 Highway 35), both being in Wall Township, Monmouth County, New Jersey; (b) all other sources that have contributed to soil or groundwater contamination at the Site; (c) all areas, including groundwater and groundwater plumes, into which hazardous substances, pollutants or contaminants may have migrated from the locations noted in (a) and (b), above; and (c) all areas in close proximity to (a), (b), and (c) above, into which access is needed to implement any of the actions required by this Decree. The Site is depicted generally on the map attached as Appendix C.

"Special Account" means the special account, within the Fund, established for the Site by EPA under section 122(b)(3) of CERCLA.

"State" means the State of New Jersey.

"State Interest" shall mean the interest rate established by Rule 4:42 of the then-current edition of the New Jersey Court Rules.

"Statement of Work" or "SOW" means the document attached as Appendix B, which describes the activities Settling Defendant must perform to implement and maintain the effectiveness of the Remedial Action.

"Sun Cleaners Source Area" shall mean unsaturated and saturated soils that are being remediated on and adjacent to the former Sun Cleaners property as specified in the ROD, the ESD and the SOW.

"System" shall mean the groundwater extraction and treatment plant including monitoring and extraction wells and piping from the wells to the plant.

"Transfer" means to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" means the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Material" means (a) any "hazardous substance" under Section 101(14) of CERCLA; (b) any pollutant or contaminant under section 101(33) of CERCLA; (c) any "solid waste" under section 1004(27) of RCRA; and (d) any "hazardous waste" under N.J.A.C. § 7:26G-5.

"White Swan Source Area" shall mean unsaturated and saturated soils that were remediated on and adjacent to the former White Swan Cleaners property as specified in the ROD, the ESD and the SOW.

"Work" means all obligations of Settling Defendant under Sections V (Performance of the Work) through VIII (Indemnification and Insurance).

"Work Takeover" means EPA's assumption of the performance of any of the Work in accordance with ¶ 12.

## IV.   OBJECTIVES

5.    The objectives of the Parties in entering into this Decree are to protect public health, welfare, and the environment through the design, implementation, and maintenance of a response action at the Site by Settling Defendant, to pay response costs of Plaintiffs, and to resolve and settle the claims of Plaintiffs against Settling Defendant and the claims of the NJDEP and Settling Defendant that were or could have been asserted against the United States with regard to this Site as provided in this Decree.

## V.   PERFORMANCE OF THE WORK

6.    Settling Defendant shall perform the Work described in the SOW in accordance with the terms, requirements, and schedules set forth in the SOW. Settling Defendant shall finance, develop, implement, operate, maintain, and monitor the effectiveness of the Remedial Action all in accordance with the SOW, including any modified SOW and all EPA-approved, conditionally approved, or modified deliverables as required by the SOW or modified SOW.

7.    After EPA, in consultation with NJDEP, issues a Certification of Remedial Action Completion under ¶ 4.8(d) of the SOW, EPA will operate and maintain the System, including monitoring, and will perform vapor intrusion mitigation for ten years from the date of issuance of the Certification of Remedial Action Completion or until the Operational Goal is met, whichever occurs first. If the Operational Goal is met before the end of the ten (10) years, EPA will conduct only groundwater monitoring, and monitored natural attenuation ("MNA"), and perform vapor intrusion mitigation, for the remainder of the ten (10) years.

8.    If the Operational Goal has not been met by the end of the ten-year period specified in ¶ 7, NJDEP will take over and operate the System until the Operational Goal is met and will conduct groundwater monitoring and MNA, as well as perform vapor intrusion mitigation as long as it is required.  If the Operational Goal is met before the end of the ten (10) years specified in ¶ 7, NJDEP will conduct groundwater monitoring and MNA, and perform vapor intrusion mitigation for as long as it is required.

9.     Nothing in this Decree and no EPA approval of any deliverable required under this Decree constitutes a warranty or representation by EPA or NJDEP that completion of the Work will achieve the Performance Standards.

10.     **Modifications to the Remedial Action and Further Response Actions**

a.     Nothing in this Decree limits EPA's authority to modify the Remedial Action or to select further response actions for the Site in accordance with the requirements of CERCLA and the NCP. Nothing in this Decree limits Settling Defendant's rights, under sections 113(k)(2) or 117 of CERCLA, to comment on any modified or further response actions proposed by EPA.

b.     If EPA modifies the Remedial Action prior to issuance of Certification of Remedial Action Completion under ¶ 4.8(d) of the SOW in order to achieve or maintain the Performance Standards, or both, or to carry out and maintain the effectiveness of the Remedial Action, and such modification is consistent with the Scope of the Remedy, then Settling Defendant shall implement the modification as provided in ¶ 10.d.

c.     If EPA selects a further response action for the Site because a reopener condition in ¶ 54 is satisfied, and to the extent such condition is attributable in whole or in part to the release or threatened release of a hazardous substance at the White Swan Source Area**,** then, subject to its right to invoke dispute resolution under Section XI and to ¶ 72, Settling Defendant shall implement the further response action as provided in ¶ 10.d.

d.     Upon receipt of notice from EPA that it has modified the Remedial Action as provided in ¶ 10.b or selected a further response action as provided in ¶ 10.c and requesting that Settling Defendant implement the modified Remedial Action or further response action, Settling Defendant shall implement the modification or further response action, subject to its right to initiate dispute resolution under Section XI within thirty (30) days after receipt of EPA's notice. Settling Defendant shall modify the SOW, or related work plans, or both in accordance with the Remedial Action modification or further response action or, if Settling Defendant invokes dispute resolution, in accordance with the final resolution of the dispute. The Remedial Action modification or further response action, the approved modified SOW, and any related work plans will be deemed to be incorporated into and enforceable under this Decree.

11.     **Compliance with Applicable Law**. Nothing in this Decree affects Settling Defendant's obligations to comply with all applicable federal and state laws and regulations. Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the Record of Decision and the SOW. The activities conducted in accordance with this Decree, if approved by EPA, will be deemed to be consistent with the NCP as provided under section 300.700(c)(3)(ii).

12.     **Work Takeover.**

a.     If EPA determines that Settling Defendant (i) has ceased to perform any of the Work that Settling Defendant is required to perform under this Section; (ii)  is seriously or repeatedly deficient or late in performing the Work that Settling Defendant is required to perform under this Section; or (iii) is performing the Work that Settling Defendant is required to perform

under this Section in a manner that may cause an endangerment to human health or the environment, EPA may issue a notice of Work Takeover to Settling Defendant, including a description of the grounds for the notice and a period of time ("Remedy Period") within which Settling Defendant must remedy the circumstances giving rise to the notice. The Remedy Period will be twenty (20) days, unless EPA determines in its unreviewable discretion that there may be an endangerment, in which case the Remedy Period will be ten (10) days.

b.   If, by the end of the Remedy Period, Settling Defendant does not remedy to EPA's satisfaction the circumstances giving rise to the notice of Work Takeover, EPA may notify Settling Defendant and, as it deems necessary, commence a Work Takeover.

c.   EPA may conduct the Work Takeover during the pendency of any dispute under Section XI (Dispute Resolution) but shall terminate the Work Takeover if and when: (1) Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to the notice of Work Takeover; or (2) upon the issuance of a final determination under Section XI (Dispute Resolution) that EPA is required to terminate the Work Takeover.

## VI.     PROPERTY REQUIREMENTS

13.   **Agreements Regarding Access and Noninterference.**

a.   As used in this Section, "Affected Property" means any real property, including the Site, where EPA determines, at any time, that access; land, water, or other resource use restrictions; Institutional Controls; or any combination thereof, are needed to implement the Remedial Action.

b.   Settling Defendant shall use best efforts to secure from the owner(s) of all Affected Property an agreement, enforceable by Settling Defendant and by Plaintiffs, requiring such owner to provide Plaintiffs and Settling Defendant, and their respective representatives, contractors, and subcontractors with access at all reasonable times to such owner's property to conduct any activity regarding the Decree, including the following as applicable:

(1)   implementing the Work and overseeing compliance with the Decree;

(2)   conducting investigations of contamination at or near the Site;

(3)   assessing the need for, planning, or implementing additional response actions at or near the Site;

(4)   obtaining samples;

(5)   determining whether the Site is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Decree; and

(6)   implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

c.    Further, each agreement required under ¶ 13.b. must commit the owner to refrain from using its property in any manner that EPA or NJDEP determines will pose an unacceptable risk to human health or to the environment as a result of exposure to Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action, including the following if and to the extent appropriate:

(1)    engaging in activities that could interfere with the Remedial Action;

(2)    using contaminated groundwater;

(3)    engaging in activities that could result in human exposure to contaminants in soils and groundwater;

(4)    constructing new structures that may interfere with the Remedial Action; and

(5)    constructing new structures that may cause an increased risk of inhalation of contaminants.

d.    As used in this Section, "best efforts" means the efforts that a reasonable person in the position of Settling Defendant would use to achieve the goal in a timely manner, including the cost of employing professional assistance and the payment of reasonable sums of money to secure access and/or use restriction agreements.

e.    Settling Defendant shall provide to EPA and NJDEP a copy of each agreement required under ¶ 13.b. If Settling Defendant cannot accomplish what is required through best efforts in a timely manner, it shall notify EPA and NJDEP, and include a description of the steps taken to achieve the requirements. If the United States deems it appropriate, it may assist Settling Defendant, or take independent action, to obtain such access or use restrictions.

14.    **Access and Noninterference by Settling Defendant**. The Settling Defendant shall: (a) provide Plaintiffs, and their representatives, contractors, and subcontractors with access at all reasonable times to the Site, to the extent the Settling Defendant has access to such property, to conduct any activity regarding the Decree, including those listed in ¶ 13.b.; and (b) refrain from using the Site in any manner that EPA determines will pose an unacceptable risk to human health or to the environment because of exposure to Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.

15.    If EPA determines in a decision document prepared in accordance with the NCP that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are appropriate, Settling Defendant shall cooperate with EPA's and NJDEP's efforts to secure and ensure compliance with such Institutional Controls.

16.    **Notice to Successors-in-Title**

a.      Settling Defendant shall, within fifteen (15) days after the Effective Date, submit for EPA approval a notice to be recorded regarding its property at the Site in the appropriate land records. The notice must: (1) include a proper legal description of the property; (2) provide notice to all successors-in-title: (i) that the property is part of, or affected by, the Site; (ii) that EPA has selected a remedy for the Site; and (iii) that the potentially responsible party has entered into a Decree requiring implementation of such remedy; and (3) identify the U.S. District Court in which the Decree was filed, the name and civil action number of this case, and the Effective Date of the Decree. Settling Defendant shall record the notice within ten (10) days after EPA's approval of the notice and submit to EPA, within ten (10) days thereafter, a certified copy of the recorded notice.  Settling Defendant may remove such notice from its property when the System is decommissioned.

b.      Until such time as the System is decommissioned, Settling Defendant shall, prior to entering into a contract to Transfer any of its property that is part of the Site, or 60 days prior to a Transfer of such property, whichever is earlier:

(1)     notify the proposed transferee that EPA has selected a remedy regarding the Site, that the potentially responsible party has entered into a Consent Decree requiring implementation of such remedy, and that the United States District Court has entered the Decree (identifying the name and civil action number of this case and the date the Court entered the Decree); and

(2)     notify EPA and NJDEP of the name and address of the proposed transferee and provide EPA and NJDEP with a copy of the notice that it provided to the proposed transferee.

17.     Notwithstanding any provision of the Decree, EPA and NJDEP retain all of their access authorities and rights, as well as all of their rights to require land, water, or other resource use restrictions and Institutional Controls, including related enforcement authorities, under CERCLA, RCRA, and any other applicable statute or regulations.

## VII.     FINANCIAL ASSURANCE

18.     To ensure completion of the Work required under Section V, Settling Defendant shall secure financial assurance, initially in the amount of $25,000,000 (Twenty-Five Million Dollars) ("Estimated Cost of the Work"), for the benefit of EPA.  The financial assurance must: (a) be one or more of the mechanisms listed below, in a form substantially similar to the relevant sample documents available from EPA and (b) be satisfactory to EPA. As of the date of lodging of this Decree, the sample documents can be found under the "Financial Assurance - Settlements" category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/. Settling Defendant may use multiple mechanisms if they are limited to surety bonds guaranteeing payment, letters of credit, trust funds, insurance policies, or some combination thereof. The following are acceptable mechanisms:

a.      a surety bond guaranteeing payment to EPA of the Estimated Cost of the Work, performance of the Work, or both, that is issued by a surety company among those listed

as acceptable sureties on federal bonds and licensed in the State of New Jersey as set forth in Circular 570 of the U.S. Department of the Treasury;

b.     an irrevocable letter of credit for the Estimated Cost of the Work, payable to EPA or at the direction of EPA, that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.     a trust fund for the Estimated Cost of the Work, established for the benefit of EPA that is administered by a trustee that has the authority to act as a trustee and whose trust operations are regulated and examined by a federal or state agency;

d.     a policy of insurance for the Estimated Cost of the Work that provides EPA with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier that has the authority to issue insurance policies in the applicable jurisdiction(s) and whose insurance operations are regulated and examined by a federal or state agency;

e.     a demonstration by Settling Defendant that it meets the relevant test criteria of ¶ 19, accompanied by a standby funding commitment that requires the affected Settling Defendant to pay funds to or at the direction of EPA, up to the amount financially assured through the use of this demonstration in the event of a Work Takeover; or

f.     a guarantee to fund or perform the Work executed in favor of EPA by a company: (1) that is a direct or indirect parent company of a Settling Defendant or has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with a Settling Defendant; and (2) demonstrates to EPA's satisfaction that it meets the financial test criteria of ¶ 19.

19.     Settling Defendant seeking to provide financial assurance for the Estimated Cost of the Work by means of a demonstration or guarantee under ¶ 18.e or 18.f must, within thirty (30) days after the Effective Date:

a.     demonstrate that:

(1)     the affected Settling Defendant or guarantor has:

i.     two of the following three ratios: a ratio of total liabilities to net worth less than 2.0; a ratio of the sum of net income plus depreciation, depletion, and amortization to total liabilities greater than 0.1; and a ratio of current assets to current liabilities greater than 1.5; and

ii.     net working capital and tangible net worth each at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

      iii.     tangible net worth of at least $10,000,000 (Ten Million Dollars); and

      iv.     assets located in the United States amounting to at least ninety (90) percent of total assets or at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; or

(2)    the affected Settling Defendant or guarantor has:

      i.     a current rating for its senior unsecured debt of AAA, AA, A, or BBB as issued by Standard and Poor's or Aaa, Aa, A or Baa as issued by Moody's; and

      ii.     tangible net worth at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

      iii.     tangible net worth of at least $10,000,000 (Ten Million Dollars); and

      iv.     assets located in the United States amounting to at least ninety (90) percent of total assets or at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

    b.   submit to EPA for the affected Settling Defendant or guarantor: (1) a copy of an independent certified public accountant's report of the entity's financial statements for the latest completed fiscal year, which must not express an adverse opinion or disclaimer of opinion; and (2) a letter from its chief financial officer and a report from an independent certified public accountant substantially identical to the sample letter and reports available from EPA. As of the date of lodging of this Decree, a sample letter and report are available under the "Financial Assurance - Settlements" subject list category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/.

    20.   If Settling Defendant provides financial assurance by means of a demonstration or guarantee under ¶ 18.e or 18.f, it must also:

    a.   annually resubmit the documents described in ¶ 19.b. within ninety (90) days after the close of the affected Settling Defendant's or guarantor's fiscal year;

    b.   notify EPA within thirty (30) days after the affected Settling Defendant or guarantor determines that it no longer satisfies the relevant financial test criteria and requirements set forth in this Section; and

      c.    provide to EPA, within thirty (30) days of EPA's request, reports of the financial condition of the affected Settling Defendant or guarantor in addition to those specified in ¶ 19.b.; EPA may make such a request at any time based on a belief that the affected Settling Defendant or guarantor may no longer meet the financial test requirements of this Section.

21.    Settling Defendant shall, within sixty (60) days after the Effective Date, seek EPA's approval of the form of Settling Defendant's financial assurance for the Estimated Cost of the Work. Within thirty (30) days after such approval, Settling Defendant shall secure all executed or otherwise finalized mechanisms or other documents consistent with the EPA-approved form of financial assurance for the Estimated Cost of the Work and shall submit such mechanisms and documents to the Regional Financial Management Officer, to DOJ, and to EPA and NJDEP  in accordance with ¶ 70.

22.    Adequacy of Financial Assurance

      a.    Settling Defendant shall diligently monitor the adequacy of the financial assurance. If any Settling Defendant becomes aware of any information indicating that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, such Settling Defendant shall notify EPA and NJDEP of such information within seven days. If EPA determines that the financial assurance for the Estimated Cost of the Work provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, EPA, will notify Settling Defendant of such determination. Settling Defendant shall, within thirty (30) days after notifying EPA or receiving notice from EPA under this Paragraph, secure and submit to EPA, as appropriate, or for approval a proposal for a revised or alternative financial assurance mechanism that satisfies the requirements of this Section. EPA may extend this deadline for such time as is reasonably necessary for the affected Settling Defendant, in the exercise of due diligence, to secure and submit to EPA a proposal for a revised or alternative financial assurance mechanism, not to exceed sixty (60) days. Settling Defendant shall follow the procedures of ¶ 24 in seeking approval of, and submitting documentation for, the revised or alternative financial assurance mechanism. Settling Defendant's inability to secure financial assurance in accordance with this Section does not excuse performance of any other requirement of this Decree.

23.    **Access to Financial Assurance**

      a.    If EPA issues a notice of a Work Takeover under ¶ 12.b. with respect to the Work, then, in accordance with any applicable financial assurance mechanism, including the related standby funding commitment, EPA may require that any funds guaranteed be paid in accordance with ¶ 23.d.

      b.    If EPA is notified that the issuer of a financial assurance mechanism intends to cancel, refuses or fails to renew the mechanism, and the affected Settling Defendant fails to provide an alternative financial assurance mechanism in accordance with this Section at least thirty (30) days prior to the cancellation date, the funds guaranteed under such mechanism must be paid prior to cancellation in accordance with ¶ 23.d.

c.    If, upon issuance of a notice of a Work Takeover under ¶ 12.b. with respect to the Work, either: (1) EPA is unable for any reason to promptly secure the resources guaranteed under any applicable financial assurance mechanism including the related standby funding commitment, whether in cash or in kind, to continue and complete the Work; or (2) the financial assurance is a demonstration or guarantee under ¶ 18.e. or 18.f., then EPA is entitled to demand an amount, as determined by EPA, sufficient to cover the cost of the remaining Work to be performed. Settling Defendant shall, within seven days after such demand, pay the amount demanded as directed by EPA.

d.    Any amounts required to be paid under this ¶ 23 must be, as directed by EPA, as appropriate: (1) paid to EPA in order to facilitate the completion of the Work by EPA or by another person; or (2) deposited into an interest-bearing account, established at a duly chartered bank or trust company that is insured by the FDIC, in order to facilitate the completion of the Work by another person. If payment is made to EPA, EPA may deposit the payment into the Fund or into the Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the Fund.

24.    **Modification of Amount, Form, or Terms of Financial Assurance**. Beginning after the first anniversary of the Effective Date, and no more than once per calendar year, Settling Defendant may submit a request to change the form, terms, or amount of the financial assurance mechanism or mechanisms. Any such request must be submitted to EPA in accordance with ¶ 21, and must include an estimate of the cost of the remaining Work, an explanation of the bases for the cost calculation, and a description of the proposed changes, if any, to the form or terms of the financial assurance. EPA will notify Settling Defendant of its decision regarding the request. Settling Defendant may initiate dispute resolution under Section XI regarding EPA's decision by the earlier of thirty (30) days after receipt of EPA's decision or one hundred and eighty (180) days after EPA's receipt of the request. Settling Defendant may modify the form, terms, or amount of the financial assurance mechanism only: (a) in accordance with EPA's approval, or (b) in accordance with any resolution of a dispute under Section XI. Settling Defendant shall submit to EPA within thirty (30) days after receipt of EPA's approval or consistent with the terms of the resolution of the dispute, documentation of the change to the form, terms, or amount of the financial assurance instrument.

25.    **Release, Cancellation, or Discontinuation of Financial Assurance**. Settling Defendant may release, cancel, or discontinue any financial assurance provided under this Section only: (a) if EPA, in consultation with NJDEP, issues a Certification of Work Completion under ¶ 4.9 of the SOW; (b) in accordance with EPA's approval, in consultation with NJDEP, of such release, cancellation, or discontinuation of financial assurance for the Estimated Cost of the Work; or (c) if there is a dispute regarding the release, cancellation or discontinuance of any financial assurance, in accordance with the agreement, final administrative decision, or final judicial decision resolving such dispute under Section XI.

## VIII.    INDEMNIFICATION AND INSURANCE

26.    **Indemnification.**

a.    Plaintiffs do not assume any liability by entering into this Decree or by virtue of any designation of Settling Defendant as EPA's and NJDEP's authorized representative under section 104(e)(1) of CERCLA. Settling Defendant shall indemnify, save and hold harmless Plaintiffs and their officials, agents, employees, contractors, subcontractors, and representatives for or from any claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendant's behalf or under its control, in carrying out activities under this Decree, including any claims arising from any designation of Settling Defendant as EPA's and NJDEP's authorized representatives under section 104(e)(1) of CERCLA. Further, Settling Defendant agrees to pay Plaintiffs all costs they incur including attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against Plaintiffs based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control in carrying out activities under with this Decree. Plaintiffs may not be held out as parties to any contract entered into by or on behalf of Settling Defendant in carrying out activities under this Decree. The Settling Defendant and any such contractor may not be considered an agent of Plaintiffs.

b.    Either Plaintiff shall give Settling Defendant notice of any claim for which such Plaintiff plans to seek indemnification in accordance with this ¶ 26, and shall consult with Settling Defendant prior to settling such claim.

27.    Settling Defendant covenants not to sue and shall not assert any claim or cause of action against Plaintiffs for damages or reimbursement or for set-off of any payments made or to be made to Plaintiffs, arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work or other activities on or relating to the Site, including claims on account of construction delays. In addition, Settling Defendant shall indemnify, save and hold Plaintiffs harmless with respect to any claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of work at or relating to the Site, including claims on account of construction delays.

28.    **Insurance**. Settling Defendant shall secure, by no later than fifteen (15) days before commencing any on-site Work, the following insurance: (a) commercial general liability insurance with limits of liability of $1,000,000 (One Million Dollars) per occurrence; (b) automobile liability insurance with limits of liability of $1,000,000 (One Million Dollars) per accident; and (c) umbrella liability insurance with limits of liability of $5,000,000 (Five Million Dollars) in excess of the required commercial general liability and automobile liability limits. The insurance policy must name Plaintiffs as additional insureds with respect to all liability arising out of the activities performed by or on behalf of Settling Defendant under this Decree. Settling Defendant shall maintain this insurance until the first anniversary after issuance of EPA's Certification of Remedial Action Completion under ¶ 4.8 of the SOW. In addition, for the duration of this Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or

subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Decree. Prior to commencement of the Work, Settling Defendant shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor. Settling Defendant shall ensure that all submittals to EPA under this Paragraph identify the White Swan Cleaners/Sun Cleaners Area Ground Water Contamination Superfund Site, Wall Township, New Jersey, and the civil action number of this case.

## IX.   PAYMENTS FOR RESPONSE COSTS

29.   **Payment for Past Response Costs and Future Response Costs Incurred by the United States other than Oversight Costs**.  Within 60 days after the Effective Date, Settling Defendant shall pay to EPA $10,800,000 (Ten Million Eight Hundred Thousand Dollars) in reimbursement of Past Response Costs and in payment of Future Response Costs (other than Oversight Costs) incurred or to be incurred by the United States in connection in with the Site. The Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of New Jersey shall provide to Settling Defendant, in accordance with ¶ 71, instructions for making this payment, including a Consolidated Debt Collection System ("CDCS") reference number, Site/Spill ID number, and DJ number which shall be used to identify all payments required to be made in accordance with this Decree. Settling Defendant shall make such payment at https://www.pay.gov in accordance with the FLU's instructions, including references to the CDCS Number. Settling Defendant shall send notices of this payment to DOJ and EPA in accordance with ¶ 71.  If the payment required under this Paragraph is late, Settling Defendant shall pay, in addition to any stipulated penalties owed under Section XII, an additional amount for Interest accrued from the Effective Date until the date of payment.

30.   **Payment of Oversight Costs to be Incurred by the United States.**

a.   **Liability for Oversight Costs.**  Settling Defendant shall be responsible for paying fifty (50) percent of the Oversight Costs, not to exceed a total of $1,500,000 (One Million Five Hundred Thousand Dollars).

b.   **Periodic Bills**. On a periodic basis, EPA will send Settling Defendant a bill for Oversight Costs, including an E-Recovery Report listing direct and indirect costs paid by EPA, its contractors, subcontractors, and DOJ.  Settling Defendant may initiate a dispute under Section XI regarding an Oversight Cost billing, but only if the dispute relates to one or more of the following issues: (1) whether EPA has made an arithmetical error; (2) whether EPA has included a cost item that is not within the definition of Oversight Costs; or (3) whether EPA has paid excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP.  Settling Defendant must specify in the Notice of Dispute the contested costs and the basis for the objection.

      c.    **Payment of Bill**.  Settling Defendant shall pay the bill, or if it initiates dispute resolution, the uncontested portion of the bill, if any, within sixty (60) days after receipt of the bill.  Settling Defendant shall pay the contested portion of the bill determined to be owed, if any, within sixty (60) days after the determination regarding the dispute.  Each payment for: (1) the uncontested bill or portion of bill, if late, and; (2) the contested portion of the bill determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the bill through the date of payment. Settling Defendant shall make payment at https://www.pay.gov using the "EPA Miscellaneous Payments Cincinnati Finance Center" link and including references to the Site/Spill ID and DJ numbers listed in ¶ 71 and the purpose of the payment.  Settling Defendant shall send notices of this payment to DOJ and EPA in accordance with ¶ 71.

      31.    **Payment of NJDEP Costs and Natural Resource Damages.**

Within sixty (60) calendar after Settling Defendant's receipt of invoices furnished by the Department, Settling Defendant shall remit payment, via separate cashier's or certified check, payable to the "Treasurer State of New Jersey" in the amounts as follows:

      a.    $1,225,000 (One Million Two Hundred and Twenty-Five Thousand Dollars) for the reimbursement of NJDEP Past Cleanup and Removal Costs and Future Cleanup and Removal Costs. Settling Defendant shall remit payment to the address specified on the invoice for the New Jersey Department of the Treasury, Division of Revenue and Enterprise Services. Settling Defendant shall also provide a copy of said payment to:

> Director
> Division of Enforcement, Technical and Financial Support
> Contaminated Site Remediation and Redevelopment Program
> Department of Environmental Protection
> 401 E. State Street– Mail Code 401-06E
> Trenton, NJ 08625.

      and

      b.    $2,500,000 (Two Million Five Hundred Thousand Dollars) as payment of compensation for restoration of, the lost value of, injury to, or destruction of Natural Resources. Settling Defendant shall remit payment to the address specified on the invoice for the New Jersey Department of the Treasury, Division of Revenue and Enterprise Services.  Settling Defendant shall also provide a copy of said payment to:

> David Bean, Chief
> Department of Environmental Protection
> Office of Natural Resource Restoration
> Mail Code 501-04
> P.O. Box 420
> Trenton, New Jersey 08625-0420.

32.   **Establishment of Escrow for Contingent Future Costs.**   If, at the end of the ten-year period specified in ¶ 7, either the Operational Goal has not been met or continued VI work is necessary, then within sixty (60) days of receiving notice from Plaintiffs that continued O&M and or VI work is necessary, Settling Defendant will establish an escrow account in the amount of $2,750,000 (Two Million Seven Hundred and Fifty Thousand Dollars), in a form that is substantially consistent with the Escrow Agreement attached as Appendix D.  In the event that O&M of the System or VI work is required after NJDEP takes over the remedy in as set forth in ¶8, funds will be drawn out of the escrow account to reimburse NJDEP for the costs of such O&M or VI work, if any.  When the Operational Goal is met and VI work is no longer required, any funds remaining in the escrow will be returned to Settling Defendant.

33.   **Deposit of Payments**.  EPA may, in its unreviewable discretion, deposit the amounts to be paid under ¶¶ 29 and 30 in the Fund, in the Special Account, or both.  EPA may, in its unreviewable discretion, retain and use any amounts deposited in the Special Account to conduct or finance response actions at or in connection with the Site, or transfer those amounts to the Fund.

## X.   FORCE MAJEURE

34.   "Force majeure," for purposes of this Decree, means any event arising from causes beyond the control of Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors that delays or prevents the performance of any obligation under this Decree despite Settling Defendant's best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that Settling Defendant exercises "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

35.   If any event occurs for which Settling Defendant will or may claim a force majeure, Settling Defendant shall notify EPA's Project Coordinator by email. The deadline for the initial notice is five (5) working days after the date Settling Defendant first knew or should have known that the event would likely delay performance. Settling Defendant shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by Settling Defendant knew or should have known. Within two (2) working days thereafter, Settling Defendant shall send a further notice to EPA and NJDEP that includes: (i) a description of the event and its effect on Settling Defendant's completion of the requirements of the Decree; (ii) a description of all actions taken or to be taken to prevent or minimize the adverse effects or delay; (iii) the proposed extension of time for Settling Defendant to complete the requirements of the Decree; (iv) a statement as to whether, in the opinion of Settling Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment; and (v) all available proof supporting its claim of force majeure. Failure to comply with the notice requirements herein regarding an event precludes Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite late or incomplete notice, is able to assess to its satisfaction whether the event is a force majeure under ¶ 34 and

whether Settling Defendant has exercised best efforts under ¶ 34, EPA may, in its unreviewable discretion, excuse in writing Settling Defendant's failure to submit timely or complete notices under this Paragraph.

36.    EPA, after a reasonable opportunity for review and comment by NJDEP, will notify Settling Defendant of its determination whether Settling Defendant is entitled to relief under ¶ 34, and, if so, the duration of the extension of time for performance of the obligations affected by the force majeure. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. Settling Defendant may initiate dispute resolution under Section XI regarding EPA's determination within 15 days after receipt of the determination. In any such proceeding, Settling Defendant has the burden of proving that it is entitled to relief under ¶ 34 and that its proposed extension was or will be warranted under the circumstances.

37.    The failure by EPA to timely complete any activity under the Decree or the SOW is not a violation of the Decree, provided, however, that if such failure prevents Settling Defendant from timely completing a requirement of the Decree, Settling Defendant may seek relief under this Section.

## XI.    DISPUTE RESOLUTION

38.    Unless otherwise provided in this Decree, Settling Defendant must use the dispute resolution procedures of this Section to resolve any dispute arising under this Decree. Settling Defendant shall not initiate a dispute challenging the Record of Decision. The United States may enforce any requirement of the Decree that is not the subject of a pending dispute under this Section.

39.    A dispute will be considered to have arisen when one or more parties sends a written notice of dispute ("Notice of Dispute") in accordance with ¶ 71. Disputes arising under this Decree must in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations may not exceed twenty (20) days after the dispute arises unless the parties to the dispute otherwise agree. If the parties cannot resolve the dispute by informal negotiations, the position advanced by EPA is binding unless Settling Defendant initiates formal dispute resolution under ¶ 40.

40.    **Formal Dispute Resolution**

   a.    **Statements of Position**. Settling Defendant may initiate formal dispute resolution by serving on the Plaintiffs, within twenty (20) days after the conclusion of informal dispute resolution under ¶ 39, an initial Statement of Position regarding the matter in dispute. The responsive Statements of Position are due within twenty (20) days after receipt of the initial Statement of Position. All Statements of Position must include supporting factual data, analysis, opinion, and other documentation. A reply, if any, is due within ten (10) days after receipt of the response. If appropriate, EPA may extend the deadlines for filing statements of position for up to forty-five (45) days and may allow the submission of supplemental statements of position.

b.     **Formal Decision**. An EPA management official at the level of the Deputy Director of the Superfund & Emergency Management Division, EPA Region 2, or, at the sole discretion of EPA, someone occupying a higher position, will issue a formal decision resolving the dispute ("Formal Decision") based on the statements of position and any replies and supplemental statements of position. The Formal Decision is binding on Settling Defendant unless it timely seeks judicial review under ¶ 41.

c.     **Compilation of Administrative Record**. EPA shall compile an administrative record regarding the dispute, which must include all statements of position, replies, supplemental statements of position, and the Formal Decision.  Settling Defendant may request that EPA supplement the administrative record prior to finalization of the Formal Decision.

d.     NJDEP shall receive all Statements of Position served by the Parties under ¶ 40.a.  NJDEP may elect, in its sole discretion, to participate in the dispute resolution procedures established in this Section.

41.     **Judicial Review.**

a.     Settling Defendant may obtain judicial review of the Formal Decision by filing, within 20 days after receiving it, a motion with this Court and serving the motion on all Parties. The motion must describe the matter in dispute and the relief requested. The parties to the dispute shall brief the matter in accordance with local court rules.

b.     **Review on the Administrative Record**. Judicial review of disputes regarding the following issues must be on the administrative record: (1) the adequacy or appropriateness of deliverables required under the Decree; (2) the adequacy of the performance of the Remedial Action; (3) whether a Work Takeover is warranted under ¶ 12; (4) determinations about financial assurance under Section VII; (5) whether a reopener condition under ¶ 54 is satisfied, including whether the Remedial Action is not protective of human health and the environment; (6) EPA's selection of modified or further response actions; (7) any other items requiring EPA approval under the Decree; (8) the extent to which the harm that is the basis for further response actions selected by EPA under ¶ 10.c. is attributable in whole or in part to the release or threatened release of a hazardous substance at the White Swan Source Area; and (9) any other disputes that the Court determines should be reviewed on the administrative record. For all of these disputes, Settling Defendant bears the burden of demonstrating that the Formal Decision was arbitrary and capricious or otherwise not in accordance with law.

c.     Judicial review of any dispute not governed by ¶ 41.b. shall be governed by applicable principles of law.

42.     **Escrow Account**. For disputes regarding an EPA billing of Oversight Costs, Settling Defendant shall: (a) establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"); (b) remit to that escrow account funds equal to the amount of the contested bill of Oversight Costs; and (c) send to EPA, in accordance with ¶ 71, copies of the correspondence and of the payment documentation (e.g., the check) that established and funded the escrow account,

including the name of the bank, the bank account number, and a bank statement showing the initial balance in the account. EPA may, in its unreviewable discretion, waive the requirement to establish the escrow account. Settling Defendant shall cause the escrow agent to pay the amounts due to EPA under ¶ 30, if any, by the deadline for such payment in ¶ 30. Settling Defendant is responsible for any balance due under ¶ 30 after the payment by the escrow agent.

43.     The initiation of dispute resolution procedures under this Section does not extend, postpone, or affect in any way any requirement of this Decree, except as EPA agrees, or as determined by the Court. Stipulated penalties with respect to the disputed matter will continue to accrue, but payment is stayed pending resolution of the dispute, as provided in ¶ 46.

## XII.     STIPULATED PENALTIES

44.     Unless the noncompliance is excused under Section 29 (Force Majeure), Settling Defendant is liable for the following stipulated penalties:

a.     (1) to the United States for any failure to pay any amount due under ¶ 29 and ¶ 30, or to establish and maintain financial assurance in accordance with Section VII; and (2) to the NJDEP for any failure to pay any amount due under ¶ 31 or to establish an escrow account under ¶ 32 (Escrow Account):

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $1,250 |
| 15th through 30th day | $1,875 |
| 31st day and beyond | $2,500 |

b.     to the United States for any failure to submit timely or adequate deliverables required by this Decree:

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $500 |
| 15th through 30th day | $1,000 |
| 31st day and beyond | $1,500 |

45.     **Work Takeover Penalty**. If EPA commences a Work Takeover, Settling Defendant is liable for a stipulated penalty in the amount of $5,000,000 (Five Million Dollars). This stipulated penalty is in addition to the remedy available to EPA under ¶ 23 (Access to Financial Assurance) to fund the performance of the Work by EPA.

46.     **Accrual of Penalties**. Stipulated penalties accrue from the date performance is due, or the day a noncompliance occurs, whichever is applicable, until the date the requirement is completed or the final day of the correction of the noncompliance. Nothing in this Decree prevents the simultaneous accrual of separate penalties for separate events of noncompliance with this Decree. Stipulated penalties accrue regardless of whether Settling Defendant has been notified of noncompliance, and regardless of whether Settling Defendant has initiated dispute resolution under Section XI, provided, however, that no penalties will accrue as follows:

a.    with respect to a submission that EPA subsequently determines is deficient under ¶ 6.6 of the SOW, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency;

b.    with respect to a matter that is the subject of dispute resolution under Section XI, during the period after the later of the date that EPA's Statement of Position is received or the date that Settling Defendant's reply thereto (if any) is received until the date of the Formal Decision under ¶ 40.b.;

c.    with respect to a matter that is the subject of judicial review by the Court under ¶ 41, during the period after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.

47.    **Demand and Payment of Stipulated Penalties**.  Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Decree, or NJDEP's determination that Settling Defendant has failed to comply with ¶ 31, EPA or NJDEP may, as appropriate, send Settling Defendant a demand for stipulated penalties. The demand will include a description of the noncompliance and will specify the amount of the stipulated penalties owed. Settling Defendant may initiate dispute resolution under Section XI within thirty (30) days after receipt of the demand. Settling Defendant shall pay the amount demanded or, if it initiates dispute resolution, the uncontested portion of the amount demanded, within thirty (30) days after receipt of the demand. Settling Defendant shall pay the contested portion of the penalties determined to be owed, if any, within thirty (30) days after the resolution of the dispute. Each payment for: (a) the uncontested penalty demand or uncontested portion, if late; and (b) the contested portion of the penalty demand determined to be owed, if any, must include an additional amount for Interest or State Interest, as appropriate, accrued from the date of receipt of the demand through the date of payment. Settling Defendant shall make payment to EPA at https://www.pay.gov using the link for "EPA Miscellaneous Payments Cincinnati Finance Center," including references to the Site/Spill ID and DJ numbers listed in ¶ 71, and the purpose of the payment. Settling Defendant shall indicate in the comment field on the https://www.pay.gov payment form that the payment is for stipulated penalties. Settling Defendant shall send a notice of this payment to DOJ and EPA, in accordance with ¶ 71. All payments to NJDEP under this Section shall indicate that the payment is for stipulated penalties and shall be made in accordance with ¶ 31. The payment of stipulated penalties and Interest or State Interest, as appropriate, if any, does not alter any obligation by Settling Defendant under the Decree.

48.    Notwithstanding any other provision of this Decree, if the United States or the NJDEP brings an action to enforce this Decree, Settling Defendant shall reimburse the United States and the NJDEP for all costs of such action, including but not limited to costs of attorney time.

49.    Nothing in this Decree limits the authority of the United States or NJDEP to seek: (a) to seek any remedy otherwise provided by law for Settling Defendant's failure to pay stipulated penalties or interest; or (b) to seek any other remedies or sanctions available by virtue of Settling Defendant's noncompliance with this Decree or of the statutes and regulations upon which it is based, including penalties under section 122(*l*) of CERCLA, provided, however, that the United States may not seek civil penalties under section 122(*l*) of CERCLA for any

noncompliance for which a stipulated penalty is provided for in this Decree, except in the case of a willful noncompliance with this Decree.

50.     Notwithstanding any other provision of this Section, the United States, or NJDEP, may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued under this Decree.

## XIII.     COVENANTS BY PLAINTIFFS

51.     **Covenants by United States**. Subject to ¶¶ 54 and 55, the United States covenants not to sue or to take administrative action against Settling Defendant under Sections 106 and 107(a) of CERCLA regarding the Site.

52.     The covenants under ¶ 51: (a) take effect upon the Effective Date, except with respect to future liability, for which these covenants take effect upon Certification of Remedial Action Completion by EPA under ¶ 4.8(d) of the SOW; (b) are conditioned on the satisfactory performance by Settling Defendant of the requirements of this Decree; (c) extend to the successors of Settling Defendant but only to the extent that the alleged liability of the successor of the Settling Defendant is based solely on its status as a successor of the Settling Defendant; and (d) do not extend to any other person.

53.     **Covenants by NJDEP**.  In consideration of the payments Settling Defendant is making pursuant to ¶ 31, above, and except as otherwise provided in ¶ 55 (General Reservations), below, NJDEP covenants not to sue or take administrative action against Settling Defendant for the Site, or for any and all of NJDEP's causes of action for NJDEP Natural Resource Damages. These covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Decree. These covenants extend to successors of the Settling Defendant but only to the extent that the alleged liability of the successor of the Settling Defendant is based solely on its status as a successor of the Settling Defendant and do not extend to any other person.

54.     **United States' Pre- and Post-certification Reservations**

a.     Notwithstanding any other provision of this Decree, the United States reserves, and this Decree is without prejudice to, the right to issue an administrative order or to institute proceedings in this action or in a new action seeking to compel Settling Defendant to perform further response actions relating to the Site, to pay the United States for additional costs of response, or any combination thereof. The United States may exercise this reservation only if, at any time, conditions at the Site previously unknown to EPA are discovered, or information previously unknown to EPA is received, and EPA determines, based in whole or in part on these previously unknown conditions or information, that the Remedial Action is not protective of human health or the environment.

b.     Before Certification of Remedial Action Completion under ¶ 4.8(d) of the SOW, the information and the conditions known to EPA include only that information and those conditions known to EPA as of the date the Record of Decision was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.

c.    After Certification of Remedial Action Completion under ¶ 4.8(d) of the SOW, the information and the conditions known to EPA include only that information and those conditions known to EPA as of the date of Certification of Remedial Action Completion and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-Record of Decision administrative record, or in any information received by EPA in accordance with the requirements of this Decree prior to Certification of Remedial Action Completion.

55.    **General Reservations**. Notwithstanding any other provision of this Decree, the United States and NJDEP reserve, and this Decree is without prejudice to, all rights against Settling Defendant regarding the following:

a.    liability for failure by Settling Defendant to meet a requirement of this Decree;

b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.    liability based on Settling Defendant's ownership of the Site when such ownership commences after Settling Defendant's signature of this Decree;

d.    liability based on Settling Defendant's operation of the Site when such operation commences after Settling Defendant's signature of this Decree and does not arise solely from Settling Defendant's performance of the Work;

e.    liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, after signature of this Decree by Settling Defendant, other than as provided in the Record of Decision, under this Decree, or ordered by EPA;

f.    liability, prior to issuance of Certification of Remedial Action Completion under ¶ 4.8(d) of the SOW, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the Remedial Action, but that are not covered by ¶ 10.b;

g.    liability to the United States for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

h.    liability for failure to comply with applicable State laws, regulations, guidance, and rules subsequent to the Site being deleted by EPA from the National Priorities List, including but not limited to, the Spill Act, the Site Remediation Reform Act, N.J.S.A. 58:10C-1 through 29, the Brownfield and Contaminated Site Remediation Act, N.J.S.A. 58:10B-1 et. seq., the Administrative Requirements for the Remediation of Contaminated Sites, N.J.A.C. 7:26C, the Technical Requirements for Site Remediation, N.J.A.C. 7:26E, and the Remediation Standards, N.J.A.C. 7:26D; and

i.    criminal liability.

56.    Subject to ¶¶ 51 and 53, nothing in this Decree limits any authority of Plaintiffs to take, direct, or order all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or to request a Court to order such action.

## XIV.    COVENANTS BY SETTLING DEFENDANT

57.    **Covenants by Settling Defendant.**

a.    Subject to ¶ 58, Settling Defendant covenants not to sue and shall not assert any claim or cause of action against the United States or NJDEP under CERCLA, § 7002(a) of RCRA, the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the New Jersey State Constitution, the New Jersey Spill Act, or at common law regarding the Site.

b.    Subject to ¶ 54, Settling Defendant covenants not to seek reimbursement from the Fund through CERCLA or any other law for costs regarding the Site, or any direct or indirect claim for reimbursement from the Spill Compensation Fund within the meaning of N.J.S.A. 58:10-23.11k or N.J.A.C. 7:1I or the Sanitary Landfill Facility Contingency Fund within the meaning of N.J.S.A. 13:1E-107 or N.J.A.C. 7:1I concerning the Site.

58.    **Settling Defendant's Reservation**. The covenants in ¶ 57 do not apply to any claim or cause of action brought, or order issued, after the Effective Date by the United States or NJDEP to the extent such claim, cause of action, or order is within the scope of a reservation under ¶¶ 54, and 55.a through 55.g.

59.    **De Minimis/Ability to Pay Waiver**. Settling Defendant shall not assert any claims and waives all claims or causes of action (including claims or causes of action under sections 107(a) and 113 of CERCLA) that Settling Defendant may have against any third party who enters or has entered into a de minimis or "ability-to-pay" settlement with EPA to the extent Settling Defendant's claims and causes of action are within the scope of the matters addressed in the third party's settlement with EPA, provided, however, that this waiver does not apply if the third party asserts a claim or cause of action regarding the Site against the Settling Defendant. Nothing in the Decree limits Settling Defendant's rights under section 122(d)(2) of CERCLA to comment on any de minimis or ability-to-pay settlement proposed by EPA.

## XV.    EFFECT OF SETTLEMENT; CONTRIBUTION

60.    The Parties agree and the Court finds that: (a) the complaint filed by the United States in this action is a civil action within the meaning of section 113(f)(1) of CERCLA; (b) this Decree constitutes a judicially approved settlement under which Settling Defendant has, as of the Effective Date, resolved its liability to the United States within the meaning of sections 113(f)(2) and 113(f)(3)(B) of CERCLA, and to NJDEP within the meaning of Section 113(f)(2) of CERCLA and Section 7f.a.(2)(b) of the Spill Act, N.J.S.A. 58:10-23.11f.a.(2)(b); and (c) Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by section 113(f)(2) of CERCLA and N.J.S.A. 58:10-23.11f.a(2)(b), or as may be otherwise provided by law, for the "matters addressed" in this Decree.  The "matters addressed"

in this Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States, NJDEP, or any other person, and NJDEP Natural Resource Damages, provided, however, that if the United States exercises rights against Settling Defendant under the reservations in ¶ 54, ¶¶ 55.a through 55.g, or if NJDEP exercises rights under the reservation in ¶ 55.h, the "matters addressed" in this Decree will no longer include those response costs or response actions or natural resource damages that are within the scope of the exercised reservation.

61.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Decree, notify DOJ, EPA and NJDEP no later than sixty (60) days prior to the initiation of such suit or claim. Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Decree, notify DOJ, EPA and NJDEP within ten (10) days after service of the complaint upon it. In addition, Settling Defendant shall notify DOJ, EPA and NJDEP within ten (10) days after service or receipt of any Motion for Summary Judgment and within ten (10) days after receipt of any order from a court setting a case for trial.

62.     **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated against Settling Defendant by either Plaintiff for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States or NJDEP in the subsequent proceeding were or should have been brought in the instant case.

63.     Nothing in this Decree diminishes the right of the United States or NJDEP under section 113(f)(2) and (3) of CERCLA or the Spill Act to pursue any person not a party to this Decree to obtain additional response costs or response action or cleanup and removal costs and NJDEP Natural Resource Damages and to enter into settlements that give rise to contribution protection pursuant to section 113(f)(2) or the Spill Act.

## XVI.     RECORDS

64.     **Settling Defendant Certification**. Settling Defendant certifies that: (a) to the best of its knowledge and belief, after thorough inquiry it has not altered, mutilated, discarded, destroyed or otherwise disposed of any material documents and electronically stored information relating to the Site, including information relating to its potential liability under CERCLA regarding the Site, since the earlier of notification of potential liability by the United States or NJDEP or the filing of suit against it regarding the Site; (b) it has fully complied with any and all EPA and NJDEP requests for information under sections 104(e) and 122(e) of CERCLA, and section 3007 of RCRA, and State law.

65.     **Retention of Records and Information**

a.     Regardless of any corporate retention policy to the contrary, Settling Defendant shall retain, and instruct its contractors and agents to retain, the following documents and electronically stored data ("Records") until ten (10) years after the Certification Completion of the Work under SOW ¶ 4.9 (the "Record Retention Period"):

(1)     All records regarding Settling Defendant's liability under CERCLA or the Spill Act regarding the Site;

(2)     All records regarding the liability of any person under CERCLA regarding the Site;

(3)     All reports, plans, permits, and documents submitted to EPA in accordance with this Decree, including all underlying research and data; and

(4)     All data developed by, or on behalf of, Settling Defendant in the course of performing the Remedial Action.

b.     At the end of the Record Retention Period, Settling Defendant shall notify EPA and NJDEP that they have ninety (90) days to request the Settling Defendant's Records subject to this Section. Settling Defendant shall retain and preserve its Records subject to this Section until ninety (90) days after EPA's and NJDEP's receipt of the notice. These record retention requirements apply regardless of any corporate record retention policy.

66.     Settling Defendant shall provide to EPA and NJDEP, upon request, copies of all Records and information required to be retained under this Section. Settling Defendant shall also make available to EPA and NJDEP, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

67.     **Privileged and Protected Claims**

a.     Settling Defendant may assert that all or part of a record requested by Plaintiffs is privileged or protected as provided under federal law and/or State law, in lieu of providing the record, provided that Settling Defendant complies with ¶ 67.b., and except as provided in ¶ 67.c.

b.     If Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiffs with the following information regarding such record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a record, Settling Defendant shall provide the record to Plaintiffs in redacted form to mask the privileged or protected portion only. Settling Defendant shall retain all records that it claims to be privileged or protected until Plaintiffs have had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendant's favor.

c.     Settling Defendant shall not make any claim of privilege or protection regarding: (1) any data regarding the Site, including all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological, or engineering data, or the portion of any other record that evidences conditions at or around the Site; or (2) the portion of any record that Settling Defendant is required to create or generate in accordance with this Decree.

68.     **Confidential Business Information (CBI) Claims**. Settling Defendant may claim that all or part of a record provided to Plaintiffs under this Section is CBI to the extent permitted by and in accordance with section 104(e)(7) of CERCLA and 40 C.F.R. § 2.203(b). Settling Defendant shall segregate and shall clearly identify all records or parts thereof submitted under this Decree for which it claims is CBI by labeling each page or each electronic file "claimed as confidential business information" or "claimed as CBI." Records that Settling Defendant claims to be CBI will be afforded the protection specified in 40 C.F.R. part 2, subpart B. If no CBI claim accompanies records when they are submitted to EPA and NJDEP, or if EPA notifies Settling Defendant that the records are not entitled to confidential treatment under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. part 2, subpart B, the public may be given access to such records without further notice to Settling Defendant.

69.     In any proceeding under this Decree, validated sampling or monitoring data generated in accordance with the SOW and reviewed and approved by EPA, if relevant to the proceeding, is admissible as evidence, without objection.

70.     Notwithstanding any provision of this Decree, Plaintiffs retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XVII.     NOTICES AND SUBMISSIONS

71.     All agreements, approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, waivers, and requests specified in this Decree must be in writing unless otherwise specified. Whenever a notice is required to be given or a report or other document is required to be sent by one Party to another under this Decree, it must be sent as specified below. All notices under this Section are effective upon receipt, unless otherwise specified. In the case of emailed notices, there is a rebuttable presumption that such notices are received on the same day that they are sent. Any Party may change the method, person, or address applicable to it by providing notice of such change to all Parties.

| | |
|---|---|
| As to DOJ: | *via email to*: eescasemanagement.enrd@usdoj.gov<br>Re: DJ # 90-11-3-11140 |
| As to DOJ on behalf of Settling Federal Agencies | via regular or overnight mail to:<br>Chief<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>Environmental Defense Section<br>Washington, D.C. 20044-7611<br>Re: DJ # _____ |
| As to EPA: | *via email to*: khan.mazeeda@epa.gov<br><br>Mazeeda Khan<br>Remedial Project Manager<br>Re: Site/Spill ID #02RX |

|  |  |
|---|---|
| As to the Regional Financial Management | *via email to*: cinwd_acctsreceivable@epa.gov Re: Site/Spill ID # 02RX |
| As to NJDEP: | |
| | Section Chief Environmental Enforcement and Environmental Justice Section Department of Law and Public Safety, Division of Law Box 093, Trenton, N.J. 08625-0093 609-633-8713 |
| | Director, Division of Remediation Management, Department of Environmental Protection 401 East State Street Mail Code 401-405X, P.O. Box 4 Trenton, N.J. 08625-0420 |
| As to Settling Defendant: | via email to: dennis.mcinerney@wsp.com |
| | Project Coordinator: Dennis P. McInerney, P.G. Principal Consultant/Senior Project Manager WSP USA 200 American Metro Blvd., Suite 113 Hamilton, NJ 08619 |
| | via email to: galina.chadwick@bofa.com |
| | Galina B Chadwick, P.E. Bank of America SVP,  Environmental Manager Global Realestate Services |
| | via e-mail to: alalonde@riker.com |
| | Alexa Richman-LaLonde Riker Danzig LLP Headquarters Plaza, One Speedwell Ave Morristown, NJ 07962 |

# XVIII.   APPENDIXES

72.   The following appendixes are attached to and incorporated into this Decree:

33

"Appendix A" is the Record of Decision and Explanation of Significant Differences

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site

"Appendix D" is the Escrow Agreement between the State and Settling Defendant

## XIX.   MODIFICATIONS TO DECREE

73.    Except as provided in ¶ 10 of the Decree and ¶ 6.6 of the SOW (Approval of Deliverables), nonmaterial modifications to Sections I through XXIII and the Appendixes must be in writing and are effective when signed (including electronically signed) by the Parties. Material modifications to Sections I through XXIII and the Appendixes must be in writing, signed (which may include electronically signed) by the Parties, and are effective upon approval by the Court. As to changes to the remedy, a modification to the Decree, including the SOW, to implement an amendment to the Record of Decision that "fundamentally alters the basic features" of the Remedial Action within the meaning of 40 C.F.R. § 300.435(c)(2)(ii) will be considered a material modification.

## XX.   SIGNATORIES

74.    The undersigned representative of the United States, the undersigned representative of NJDEP, and the undersigned representative of Settling Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind such Party to this document.

## XXI.   PRE-ENTRY PROVISIONS

75.    If for any reason the Court should decline to approve this Decree in the form presented, this agreement, except for ¶ 76 and ¶ 77, is voidable at the sole discretion of any Party and its terms may not be used as evidence in any litigation between the Parties.

76.    This Decree will be lodged with the Court for at least 60 days for public notice and comment in accordance with section 122(d)(2) of CERCLA and 28 C.F.R. § 50.7. The United States may withdraw or withhold its consent if the comments regarding the Decree disclose facts or considerations that indicate that the Decree is inappropriate, improper, or inadequate.

77.    NJDEP, in accordance with N.J.S.A. 58:10-23.11e.2, shall arrange for written notice of this Decree to all other potentially responsible parties of whom NJDEP had notice as of the date NJDEP published notice of the proposed settlement in this matter in the New Jersey Register.  NJDEP shall publish notice of this Decree in the New Jersey Register and on NJDEP's web site for public comment for a period of sixty (60) days. In accordance with N.J.S.A. 58:10-23.11e.2, such notice shall include the following information: a) the caption of this case; b) the name and location of the Site; c) the name of the Settling Defendant; d) a summary of the terms of this Decree; and e) that there are sixty (60) days to comment on the proposed Decree.

78.     NJDEP reserves the right to withdraw or withhold its consent to this Decree if NJDEP receives information that discloses facts or considerations that indicate to NJDEP in its sole discretion, that the Decree is inappropriate, improper, or inadequate.

79.     Settling Defendant agrees not to oppose or appeal the entry of this Decree.

## XXII.    INTEGRATION

80.     This Decree constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, regarding the subject matter of the Decree.

## XXIII.    FINAL JUDGMENT

81.     Upon entry of this Decree by the Court, this Decree constitutes a final judgment under Fed. R. Civ. P. 54 and 58 among the Parties.

SO **ORDERED** this ___ day of _____, 20__.


_____

United States District Judge

Signature Page for Consent Decree in *U.S. v. Bank of America, N.A.*

**FOR THE UNITED STATES OF AMERICA:**

Todd Kim
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division


May 15, 2023                          *s/ Patrick B. Bryan*
Dated                                 Patrick B. Bryan
                                      Senior Attorney
                                      U.S. Department of Justice
                                      Environment and Natural Resources Division
                                      Environmental Enforcement Section
                                      Ben Franklin Station
                                      P.O. Box 7611
                                      Washington, DC 20044-7611
                                      patrick.bryan@usdoj.gov
                                      202-616-8299

Signature Page for Consent Decree in *U.S. v. Bank of America, N.A.* (D.N.J.)

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:**

Pat
Evangelista
<span>Digitally signed by Pat Evangelista<br>Date: 2023.04.06 14:00:51 -04'00'</span>

_____
Pat Evangelista
Director, Superfund and Emergency
Management Division
U.S. Environmental Protection Agency
Region 2

DAMARIS URDAZ
<span>Digitally signed by DAMARIS URDAZ<br>Date: 2023.04.06 12:30:29 -04'00'</span>

_____
Damaris C. Urdaz
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 2
290 Broadway, 17th Floor
New York, NY 10007

Signature Page for Consent Decree in *U.S. v. Bank of America, N.A.* (D.N.J.)

**FOR THE NEW JERSEY**
**DEPARTMENT OF ENVIRONMENTAL**
**PROTECTION:**

April 5, 2023
Dated

Sean D. Moriarty
Deputy Commissioner
New Jersey Department of Environmental
Protection

March 20, 2023
Dated

David E. Haynes
Assistant Commissioner
Contaminated Site Remediation &
Redevelopment Program
New Jersey Department of Environmental
Protection

Signature Page for Consent Decree in *U.S. v. Bank of America, N.A.* (D.N.J.)

**FOR THE NEW JERSEY SPILL COMPENSATION FUND:**

March 20, 2023
Dated

David E. Haymes
Administrator
New Jersey Spill Compensation Fund

Signature Page for Consent Decree in *U.S. v. Bank of America, N.A.* (D.N.J.)

**FOR MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW
JERSEY:**

Attorney for the New Jersey Department of
Environmental
Protection, Commissioner of the New Jersey
Department of Environmental Protection,
and Administrator of the New Jersey Spill
Compensation Fund

04/05/2023
Dated

Carley A. Doyle
Deputy Attorney General

Signature Page for Consent Decree in *U.S. v. Bank of America, N.A.* (D.N.J.)

**FOR:**   Bank of America

4/5/23
Dated

Name:  Michael C. Ankrom, Jr.
Title:  Managing Director, Bank of America N.A.

      If the Decree is not approved by the Court within sixty (60) days after the date of lodging, and the United States requests, this Settling Defendant agrees to accept service of the complaint by mail, and to waive the formal service requirements set forth under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to service of a summons. This Settling Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service. This Settling Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint. The Parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

| | |
|---|---|
| Name: | Ken Swenson |
| Title: | Senior Vice President and Associate General Counsel |
| Company: | Bank of America |
| Address: | 333 S. Hope St., 24th Floor |
| | Los Angles, CA 90071 |
| | Mail Code: CA9-193-24-01 |
| Phone: | (213) 621-8703 |
| email: | ken.swenson@bofa.com |